IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA                                           PLAINTIFF

      v.            Civil No. 07-50054

GUY WESLEY HAMILTON                                                DEFENDANT

### MEMORANDUM OPINION AND ORDER

On September 18, 2007, and October 3, 2007, the Court conducted hearings on Defendant's **Motion to Suppress (Doc. 7)**. Pursuant to defense counsel's request, the Court permitted the parties a period of time to submit post-hearing briefs. Those briefs have now been submitted and the matter is ripe for decision. The Court, being well and sufficiently advised, finds that the Motion to Suppress should be **DENIED**. The Court finds and orders as follows with respect thereto:

### BACKGROUND

1.   In 1998, the defendant was convicted in state court of first degree sexual abuse and transportation and distribution of matter depicting child pornography. Defendant served a period of incarceration for this offense and was on parole when the events at issue took place. Condition Number 10 of the conditions of release imposed upon defendant on March 11, 2002, by the State of Arkansas Post Prison Transfer Board included the following provision:

> *Search and Seizure*: You must submit your person, place of residence, and motor vehicles to search and seizure at any time, day or night, with or without a search

>     warrant, whenever requested to do so by any Department
>     of Community Punishment officer.

(Gov't Ex. 1 pg. 2 ¶ 10.)

2.   Defendant signed the order of conditional release, indicating that he agreed to comply with all conditions thereof. (Gov't Ex. 1.) Section XV of the Post Prison Transfer Board's Policies and Procedures, promulgated under the statutory authority of Ark. Code Ann. § 16-93-201, et seq.,[1] provides:

>     As indicated in condition number 10, any releasee's
>     automobile or residence may be searched by a Department
>     of Community Correction officer, without a warrant ...
>     if the Department of Community Correction officer has
>     reasonable grounds for investigating whether a releasee
>     has violated the terms of his/her release or committed
>     a crime.  The term "reasonable grounds" ... means a
>     reasonable suspicion that a releasee has committed a
>     release violation or crime.

(Def. Ex. B pgs. 14-15.)  The order of conditional release signed by defendant stated, "Attached is a copy of the conditional release rules and regulations."  (Gov't Ex. 1 at pg. 1.)

3.   In October 2006, Ashley Harvey, a probation and parole officer with the Department of Community Correction, became defendant's supervising officer.  Harvey testified that during a routine office visit in November 2006, defendant advised her that he had a computer and e-mail accounts and that he had been surfing the internet.  Harvey acknowledged that defendant's conditions of release did not restrict his computer usage in any way, but noted

---

[1] Specifically, Ark. Code Ann. § 16-93-206(a)(4) provides that the Board has "the right to formulate all policies, rules, and regulations regarding parole."

that defendant had twice been convicted (once in state court and once in federal court) of obtaining child pornography through the use of the internet.  Harvey explained that when she learned that defendant had a computer and had been surfing the internet, she became suspicious that he might be attempting to obtain child pornography again.

    4.   Harvey testified that, based on her suspicions, in May 2007, she asked parole officers Mike Parker and James Tucker to perform a random search of defendant's residence, including an image scan of defendant's computer.  Harvey explained that she did not conduct the search herself because she was not trained to perform image scans.  When asked why the search was not performed until May 2007, when she learned of defendant's computer usage back  in November 2006, Harvey explained that this was due to problems with manpower and getting "a plan together."

    5.   When questioned about the Post Prison Transfer Board's Policies and Procedures, Harvey stated that her office was not governed by them and that releasees generally are not given a copy of them.

    6.   Parole Officer Parker testified that he is certified to perform image scans and that, on May 29, 2007, Officer Harvey asked him to do a "home check" on defendant and to run an image scan on defendant's computer.  Parker testified that he and Parole Officer James Tucker were going to perform several home checks on

that date; when questioned on cross-examination about this issue, Parker acknowledged that he attended a meeting with police officers and parole officers at the Fayetteville Police Department that day and that he had made the statement that he was performing spot checks on area sex offenders.

7. Parker testified that he and Tucker arrived at defendant's residence – a six to eight foot camper trailer – at approximately 8:00 p.m. on the evening of May 29th. According to Parker, Tucker knocked on the door and defendant's yelled out, "Let me get dressed." Parker testified that he heard a lot of shuffling around and commotion in the trailer and that it took about five minutes for defendant to answer the door – wearing only sweat-pants.

8. Parker testified that he advised the defendant they were there to conduct a home search and that he immediately saw beer cans in the trailer, which constituted a violation of defendant's parole conditions[2].

9. Parker testified that he saw defendant's laptop computer and that he advised defendant that he was going to conduct an image scan on it. When Parker opened the laptop, the screen was black but there was a media window bar with the title "Daddy and Daughter." Parker testified that when he asked defendant what this video was, defendant stated that he did not know and he began

---

[2] One of the special conditions of defendant's parole was "total abstinence." (Gov't Ex. 1 at pg. 1.)

sweating and pacing. Parker then manually searched defendant's laptop for the video, but he was unable to locate it. According to Parker, this indicated that the video was not stored on defendant's computer, but was on a DVD, CD or perhaps a portable hard-drive. Parker testified that he then conducted an image scan of defendant's computer, but did not locate any questionable material.

10. Parker testified that he told the defendant that he believed the defendant was viewing something questionable and advised him that he needed to cooperate. Defendant then informed Parker that there were three CD's under a couch cushion and that he had been viewing one of them and masturbating when the parole officers arrived. Parker testified that he then put one of the CD's into defendant's laptop and it showed a man performing oral sex on a child. As Parker believed that defendant's possession of the CD was a crime, he contacted the Washington County Sheriff's Office and requested assistance.

11. Corporal Glenn Latham with the Washington County Sheriff's Office arrived and took possession of the three CD's found under the couch cushion, as well as sixteen other CD's found in the vicinity of the laptop. Defendant was placed in custody and Detective Charles Rexford, a crime scene specialist, was then called to the scene.

12.  Detective Rexford testified that after he arrived at defendant's residence and learned of what had transpired, he had an officer secure the scene and, the next morning, he completed an affidavit in support of a search warrant.  In the affidavit, Detective Rexford stated that based on the parole officers' home visit and the CD's they discovered, he had reason to believe that the defendant had concealed at his residence "child p[or]nography recorded on CD's, tapes, photographs, writings, along with computer, computer printer, ext[e]rnal hard drive, cellular telephone, I-pod, and assorted computer accessories to aid in the capture and recording of said p[or]nography."  (Gov't Ex. 4.)

13.  At approximately 11:40 a.m. on May 30, 2007, Washington County Circuit Judge Kim Smith issued a search warrant.  (Def. Ex. A.)  The warrant was executed at approximately 12:36 p.m. on May 30th, and a thumb drive, hard drive, lap top computer, and numerous other items were seized from the defendant's residence.  (Gov't Ex. 3.)

14.  While the affidavit supporting the search warrant described the items to be seized, the search warrant itself mistakenly omitted this information.  Detective Rexford explained that he prepared the warrant and when he attempted to fix a typographical error in it, he accidentally deleted the description of the items to be seized.  Detective Rexford testified that the affidavit containing a description of these items, however, was

submitted to Judge Smith along with the warrant – although not physically attached thereto – and Judge Smith read and signed the affidavit.

15. On June 1, 2007, after Detective Rexford discovered the omission in the warrant, an amended search warrant was filed that included a description of the items subject to seizure. (Gov't Ex. 5.)

16. According to the Government, the items seized from the defendant's residence on May 30th, were not "searched" until on or after June 5, 2007, when the items were turned over to Fayetteville Police Department Corporal Mike Parks, the Department's computer forensic examiner. Corporal Parks examined a TDK, DVD and Verbatim CD. The remaining evidence, which included the defendant's laptop and thumbdrives, was searched on or after August 1, 2007, when those devices were turned over to and examined by the Federal Bureau of Investigation.

17. On August 8, 2007, a two count indictment was filed charging defendant with possession of a thumbdrive (Count One) and a DVD (Count Two) that contained visual depictions of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2).

**DISCUSSION**

**May 29th Search by Parole Officers**

18. Defendant's conditions of release, established by the Arkansas Post Prison Transfer Board, provided that his residence could be searched at any time by any Department of Community Punishment officer. As the Government points out in its post-hearing brief, the Supreme Court has held that a parole condition which authorizes parole officers to conduct a completely "suspicionless search" does not violate the Fourth Amendment. See Samson v. California, 126 S. Ct. 2193, 2196 (S. Ct. 2006). However, the Court does not believe that the search condition at issue in this case authorized a suspicionless search. As pointed out above, the Post Prison Transfer Board's Policies and Procedures, promulgated pursuant to authority granted to the Board by Arkansas statute, provide that with regard to "condition number 10" – the search condition – a parolee's residence may be searched only if the parole officer has "reasonable suspicion that a [parolee] has committed a release violation or crime." (Def. Ex. B pgs. 14-15.) Defendant's conditional release order stated that the "conditional release rules and regulations" were attached.

The Court rejects Parole Officer Harvey's testimony that she was not governed by the Post Prison Transfer Board's Policies and Procedures. The Board is responsible for deciding what release conditions to impose, and parole officers are responsible for

supervising compliance with these conditions.  See Ark. Code Ann. § 16-93-101(1) (a parolee is subject to the conditions imposed by the Board and to the supervision of the Department of Community Correction).  The Court, therefore, finds that the conditions of defendant's release were governed by the Post Prison Transfer Board's Policies and Procedures and that reasonable suspicion was required to conduct a search of defendant's residence.

     19.  The Court next addresses whether the parole officers had the requisite reasonable suspicion to search defendant's residence.  Defendant's conditions of release did not restrict his computer usage in any way.  Thus, it is questionable whether Harvey had reasonable suspicion to believe that defendant was violating the conditions of his release or committing a crime based simply on the fact that defendant admitted having a computer and surfing the internet.

     However, even if reasonable suspicion may have been lacking when Parole Officers Parker and Tucker went to defendant's residence, the Court concludes that reasonable suspicion arose once they knocked on the door and defendant opened it.  Parker testified that when they knocked on the door, defendant yelled out, "Let me get dressed."  Parker then heard a lot of commotion and shuffling around inside the camper trailer and it took defendant about five minutes to answer the door.  When defendant opened the door, he was wearing only sweat-pants and Parker

immediately saw beer cans in the trailer, which violated defendant's conditions of release.

The Court believes that the totality of the circumstances – defendant's two convictions for obtaining child pornography through the use of the internet, his admission that he owned a computer and was surfing the internet, the length of time it took defendant to supposedly put on a pair of sweat-pants and answer the door, the commotion heard by the officers prior to his answering the door, and the beer cans seen in his trailer – gave the parole officers reasonable suspicion to believe that defendant had violated the conditions of his release or committed a crime and that he was attempting to hide or destroy evidence thereof before he answered the door.  Cf. United States v. Yuknavich, 419 F.3d 1302, 1311 (11th Cir. 2005) (probation officers had reasonable suspicion to search probationer's home computer:  officers knew of probationer's prior convictions for possession of child pornography and of probation condition restricting his internet usage to work hours and work-related matters; further, probationer delayed some ten minutes in opening the door after officers arrived at his house – time not spent getting fully dressed because he was shirtless when he opened the door).

The Court, therefore, finds that the May 29th search of defendant's residence by parole officers did not violate defendant's Fourth Amendment rights in any way.

20.  In his post-hearing brief, defendant argues that the search violated his Fourteenth Amendment equal protection rights, because the parole officers had no rational basis for going to defendant's residence other than "the fact that he was one of the convicted sex offenders they were intentionally targeting for searches."  None of the cases cited by defendant in support of this equal-protection argument are analogous to the facts of this case.

In any event, even if targeting sex offenders for searches could be said to implicate equal protection concerns, the parole officers did not go to defendant's residence simply because he was a sex offender.  The parole officers went to defendant's residence because he was still on parole, was subject to a search condition, and had admitted owning a computer and surfing the internet.  These facts certainly provided at least a rational basis for going to defendant's residence.  The Court, therefore, sees no merit to defendant's equal-protection argument.

### May 30th Search Pursuant to a Search Warrant

21.  Defendant argues that the search warrant's omission of the items to be seized rendered the warrant defective because it "completely failed to limit the police' authority to seize anything and everything that might come to hand in that place." (Doc. 29 at pg. 5.)

22. The Fourth Amendment states, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV.

> Specificity is required in the warrant itself in order to limit the discretion of the executing officers as well as to give notice to the party searched.... However, if the affidavit [supporting the warrant] is incorporated into the warrant, it may cure the particularity defect of the warrant if the affidavit accompanies the warrant and the warrant uses suitable words of reference to incorporate the affidavit.

<u>United States v. Thomas</u>, 263 F.3d 805, 808 (8th Cir. 2001) (internal citation omitted), <u>cert. denied</u>, 534 U.S. 1146 (2002).

23. The search warrant in this case specifically referred to the affidavit, which included a description of the items to be seized, and the warrant further stated: "see attached affidavit." While Detective Rexford testified that the affidavit was not physically attached to the warrant, the affidavit was presented to Judge Smith, as evidenced by his signature thereon.

24. Further, Detective Rexford was the officer who completed the affidavit, obtained the search warrant, and executed the warrant. Thus, Detective Rexford had personal knowledge of the items to be seized and could be said to have executed the search warrant in good faith. <u>See</u> <u>id.</u> at 809 (upholding search even though warrant was facially invalid because, although warrant contained incorrect address, agent executing warrant was the same

agent who obtained the warrant and he personally knew which premises to search).

The Court, therefore, concludes that the mistaken omission of a description of the items to be seized in the search warrant did not render the May 30th search unlawful.

## CONCLUSION

25. Based on the foregoing, the Court finds that defendant's **Motion to Suppress (Doc. 7)** is without merit. Accordingly, the motion is hereby **DENIED.**

IT IS SO ORDERED this 25th day of October, 2007.

>                             /S/JIMM LARRY HENDREN
>                             JIMM LARRY HENDREN
>                             UNITED STATES DISTRICT JUDGE